IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

BRIAN BROWN,

    Plaintiff,

v.                              CIVIL ACTION NO. 1:17-04086

PRACTICELINK, LTD.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff's motion to remand. ECF No. 6. For the reasons that follow, plaintiff's motion is **DENIED**.

### I.    BACKGROUND

**A. Procedural History**

The instant dispute centers on whether plaintiff was unlawfully terminated and subjected to workplace discrimination while employed by defendant, PracticeLink, LTD. See Complaint at ¶¶ 17-30. Brian Brown sued PracticeLink on August 25, 2017 in the circuit court of Mercer County, West Virginia. See Complaint. Defendant removed the action on the basis of diversity jurisdiction less than a month later. See ECF No. 1. Plaintiff filed a motion to remand the case to state court on October 16, 2017, contending that complete diversity does not exist because PracticeLink's principal place of business is West

Virginia, not Missouri. ECF No. 6. Reviewing the memoranda of plaintiff and defendant, see ECF Nos. 7 and 9, the court finds that complete diversity exists and denies plaintiff's motion to remand.

**B. PracticeLink, LTD**

According to its internet website, PracticeLink is an online physician recruitment agency connecting physicians and practitioners "in more than five thousand hospital, medical groups, and private practices nationwide." See ECF No. 6-2. PracticeLink maintains three offices located in St. Louis,[1] Missouri; Louisville, Kentucky; and Hinton, West Virginia. See Affidavit of Kenneth Allman, ECF No. 9-1.

PracticeLink's internet website lists its address as Hinton, West Virginia. See ECF No. 6-2. The West Virginia Secretary of State Business and Licensing database indicates that PracticeLink's local office address, mailing address, notice of process address, and principal office address are located in Hinton. See ECF No. 6-1. The database also states that Kenneth Allman, PracticeLink's president and secretary, resides in St. Louis, Missouri. Id. Allman's affidavit also

---

[1] Defendant's Missouri address is located at 7237 Forsyth Boulevard. The parties' briefs and exhibits indicate that this address is located in St. Louis, Missouri and/or Clayton, Missouri. For clarity, this court uses St. Louis throughout this Memorandum Opinion and Order.

declares that he has "always maintained [his] primary office in PracticeLink's St. Louis, Missouri office." ECF No. 9-1, ¶ 6.

Plaintiff alleges that the St. Louis address is merely Allman's home address. See Plaintiff's Motion in Support of Remand at p. 6 (ECF No. 7). In support, plaintiff includes photographs of defendant's Hinton and St. Louis business locations. It appears that the St. Louis address is a residential building, while the Hinton address is a commercial office that includes a "PracticeLink" sign. Compare ECF No. 6-3, with ECF No. 6-4.

While PracticeLink's client files are maintained in Hinton, WV, the business' corporate records are kept and maintained in St. Louis. See Affidavit of Brian Brown, ECF No. 6-6, ¶ 3; Affidavit of Kenneth Allman, ECF No. 9-1, ¶ 10. The parties dispute how often Mr. Allman travels to Hinton. Compare ECF No. 6-6, ¶ 4 (plaintiff: "at least a weekly basis); with ECF No. 9-1, ¶ 12 (defendant: "every 6-8 weeks").

As to the workplace of PracticeLink's corporate officers, the plaintiff alleges that "the department heads worked from Hinton" and attaches the Linkedin page of the Director of Human Resources & People Development at PracticeLink that states she works in Lewisburg,[2] West Virginia, see ECF 6-6 ¶ 3, ECF No. 6-5.

---

[2] Lewisburg is an estimated 50-minute drive to Hinton, West Virginia.

The defendant responds that Allman (president and secretary), the chief financial officer, and chief information officer of PracticeLink maintain their primary offices in Missouri. ECF No. 9-1, ¶¶ 6-9.

Finally, the plaintiff includes an article from the Greenbrier Valley Quarterly where Allman is quoted as follows:

> "Moving the business to Hinton was out of necessity. Being able to hire family members and other people in the community allowed the business to continue to grow in a way that wouldn't have been possible for me in St. Louis," Allman says. "It allowed me time, and a low-cost overhead to learn from my mistakes." Hinton gave Allman and PracticeLink a home base in a place that felt like home . . . . Now, Allman's employees span offices in five states, with more than 60 based in Hinton between PracticeLink and MountainPlex. And still, Hinton is home, using technology to serve the needs of health care organizations throughout the country and around the world. "Putting PracticeLink in Hinton gave me the support of a small town . . ."

See ECF No. 6-7.

## II. DISCUSSION

### A. Standard of Review

The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)(citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)). Any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. Mulcahey, 29 F.3d at 151 (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941)).

4

**B. Applicable Law**

Federal courts are courts of limited jurisdiction. Article III of the U.S. Constitution restricts federal jurisdiction to claims arising from federal questions and claims that satisfy diversity jurisdiction. 28 U.S.C. § 1441, the "removal statute," provides that a case filed in state court may be removed to federal court when the defendant shows that the federal court has original jurisdiction. See Mulcahey, 29 F.3d 148, 151 (4th Cir. 1994).

28 U.S.C. § 1332 confers federal jurisdiction over cases and controversies exceeding $75,000 where diversity exists between "citizens of different states." The phrase "between citizens of different states" has been interpreted to require "complete diversity," i.e., the citizenship of each plaintiff must be diverse from the citizenship of each defendant. Caterpillar Inc., v. Lewis, 519 U.S. 61, 68 (1996) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

In this case, complete diversity hinges on PracticeLink's principal place of business.[3] Plaintiff contends that

---

[3] Neither party contests that plaintiff is a resident of West Virginia, that Practicelink is incorporated under the laws of Missouri, and that the amount in controversy exceeds $75,000.

PracticeLink's principal place of business is in West Virginia, but PracticeLink argues that Missouri is its principal place of business.

In 2010, the Supreme Court announced the "nerve center test," clarifying that a corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010); see also Central West Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 107 (4th Cir. 2011) ("In sum, the touchstone now for determining a corporation's principal place of business for diversity purposes is the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.") (internal citations and quotations omitted).

While this nerve center will often be "where the corporation maintains its headquarters," it must be the place where significant corporate decisions are made and corporate policies are set. Id. at 93; see also Hoschar v. Appalachian Power, 739 F.3d 163, 172 (4th Cir. 2014) ("We conclude that if a corporation's day-to-day operations are managed in one state, while its officers make significant corporate decisions and set corporate policy in another, the principal place of business is the latter."). Therefore, a "corporation's day-to-day operations are not relevant to the nerve center test under

Hertz." Hoschar, 739 F.3d at 171 (quoting Hertz, 559 U.S. at 105).

In Hertz, the Supreme Court recognized that the nerve center test could "produc[e] results that cut against the basic rationale for 28 U.S.C § 1332." Id. at 96. Nevertheless, Hertz stressed that even "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." Id.

However, courts should be mindful of attempts at jurisdictional manipulation as the principal place of business must be "the actual center of direction, control, and coordination, . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who had traveled there for the occasion)." Id. at 93.

Finally, Hertz recognized the difficulty in determining a corporation's nerve center in a globalized society. Id. at 96-97 ("[S]ome corporations may divide their command and coordinating functions among officers who work at several different locations . . . . That said, our test nonetheless points courts in a single direction, towards the center of overall direction, control, and coordination.").

The Fourth Circuit's first application of Hertz occurred in Central West Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101 (4th Cir. 2011). While the day-to-day operations of Mountain State Carbon occurred in Wheeling, West Virginia, the Fourth Circuit observed that "a critical mass . . . [s]even of [defendant's] eight corporate officers – including its chief executive officer, chief operating officer, chief financial officer, and general counsel and secretary" maintained their offices in Dearborn, Michigan. Id. at 105-06. Moreover, considering Hertz's focus upon corporate direction and control, the Fourth Circuit gave no weight to the fact that defendant's "day-to-day operations and public interface" were conducted in Wheeling. Id. at 106. Thus, the court concluded that Michigan, not West Virginia was Mountain State Carbon's principal place of business. Important to the instant case, the court disregarded the corporation's representations in a newspaper article that Wheeling was the corporation's "headquarters" because "materials [newspaper articles], . . . do not convert Wheeling, West Virginia into the place where the corporations high level officers direct, control, and coordinate the corporation's activities." Id. at 105 n.2 (quoting Hertz, 559 U.S. at 80) (quotations omitted).

**C. Analysis**

While the record indicates PracticeLink's day-to-day operations are managed in Hinton, West Virginia, its officers direct, control, and coordinate PracticeLink's activities from St. Louis. PracticeLink's officers (president/secretary, chief financial officer, and chief information officer) maintain their primary offices in St Louis. ECF No. 9-1, ¶¶ 6-9. The fact that PracticeLink's Director of Human Resources & People Development works out of West Virginia, ECF No. 6-6 ¶ 3, does not overwhelm this "critical mass" of control located in St. Louis. Mountain State Carbon, 636 F.3d at 105-06.

Additionally, the fact that PracticeLink's president represented his affection[4] for Hinton, West Virginia in the Green Valley Quarterly makes no legal difference. See ECF No. 6-7; Mountain State Carbon, 636 F.3d at 105 n.2 (giving no weight to representations in a newspaper article, which referred to Wheeling, West Virginia, as the corporation's headquarters in light of the Hertz nerve center test).

Finally, plaintiff alleges that because PracticeLink's Hinton address is a business location while its St. Louis address is a residential location, that Hinton should be viewed as the business' nerve center. See Plaintiff's Motion in

---

[4] Of note, nowhere in the article is Allman quoted to say West Virginia is PracticeLink's home or headquarters.

Support of Motion to Remand at 6 (ECF No. 7). The court does not agree. The fact that PracticeLink is directed, controlled, and coordinated from a residential address makes no difference and does not rise to the level of manipulation discussed in Hertz. Hertz 559 U.S. at 97 (examples of manipulation include "mail drop box, a bare office with a computer, or the location of an annual retreat"). The physical character of the dispositive. Accordingly, not only do PracticeLink's corporate officers direct, control, and coordinate activities from St. Louis, but PracticeLink's corporate records are also kept and maintained in St. Louis. See Affidavit of Brian Brown, ECF No. 6-6, ¶ 3; Affidavit of Kenneth Allman, ECF No. 9-1, ¶ 10.

Akin to Mountain State Carbon, while the majority of PracticeLink's day-to-day operations are conducted in West Virginia, PracticeLink's officers "direct, control, and coordinate the corporation's activities" from St. Louis. Hertz, 559 U.S. at 80 (2010); see also Mountain State Carbon, LLC, 636 F.3d at 107. As a result, PracticeLink's principal place of business is in Missouri, achieving the necessary complete diversity for federal jurisdiction in this matter, Caterpillar Inc., v. Lewis, 519 U.S. 61, 68 (1996), and resulting in the court's denial of plaintiff's motion to remand.

### III. CONCLUSION

For the reasons above, the court hereby **DENIES** plaintiff's motion to remand. ECF No. 6.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** on this 5th day of December, 2017.

ENTER:

David A. Faber
Senior United States District Judge